IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

DAVID SHILOH BODINE, )
)
Plaintiff, )
)
v. ) Case No. CIV-10-142-FHS
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff David Shiloh Bodine (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on May 8, 1966 and was 42 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as an electric motor assembler. Claimant alleges an inability to work beginning January

3

23, 2006 due to limitations resulting from degenerative disk disease of the lumbar and cervical spine with spinal and/or neuroforaminal stenosis, radiculopathy, neuropathy, lumbar myofascial dysfunction, obesity, hypertension, and tachycardia.

**Procedural History**

On December 15, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On July 11, 2008, an administrative hearing was held before ALJ Lantz McClain in Sallisaw, Oklahoma. On August 25, 2008, the ALJ issued an unfavorable decision on Claimant's application. On February 19, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work.

4

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) failing to properly evaluate the medical opinions of Claimant's treating physician; (2) selectively failing to discuss significantly probative evidence which conflicted with the ALJ's findings; and (3) engaged in a faulty credibility analysis.

**Opinions of Claimant's Treating Physician**

Claimant asserts the ALJ erroneously failed to fully consider the opinions of his treating physician, Dr. Vikki Sutterfield. On January 27, 2006, Dr. Sutterfield authored a letter stating Claimant was her patient and that he suffered from lumbosacral myofascial dysfunction and lumbar disc degeneration at L3-4, L4-5, and L5-S1. She stated that Claimant's medical conditions result in his inability to work "or at times even perform essential activities of daily living." Dr. Sutterfield found Claimant had numbness in his right leg and a burning sensation when standing for a short period of time. He also had increased pain and stiffness after sitting in one position for any length of time. She stated that Claimant has decreased strength in his legs and an unsteady gait. He was unable to drive and became very dependent on family members for support and assistance. Dr. Sutterfield stated that Claimant was taking pain medications and muscle relaxers to receive

5

some relief. She concludes that in her opinion, Claimant was disabled from any form of work at this time. (Tr. 148).

On February 3, 2006, Claimant underwent a lumbar MRI which showed disc desiccation at L3-4, L4-5, and L5-S1. A small right foraminal disc protrusion with right foraminal stenosis was present at L5-S1 and a small left foraminal disc protrusion with mild left foraminal stenosis was noted at L4-5. No evidence of disc bulge or herniation was found. Additionally, no spinal or foraminal stenosis was found. (Tr. 140). On February 6, 2006, Dr. Thomas Cheyne referred Claimant to a neurosurgeon for evaluation. (Tr. 139).

On March 23, 2006, Claimant was attended by Dr. Arthur Johnson, a neurosurgeon. Dr. Johnson found the MRI scan of Claimant's lumbar spine revealed a left disc herniation at L5-S1 arising from a small disc herniation at L4-5. He referred Claimant for further testing. (Tr. 137-38).

On April 6, 2006, Claimant was again evaluated by Dr. Sutterfield, complaining of back and shoulder pain. A cervical myelogram showed mild effacement of the thecal sac at the C3-4 level. (Tr. 133-34). A lumbar myelogram showed mild effacement of the thecal sac at the L3-4 level with some attenuation of contrast in a right nerve root. A lumber CT scan showed mild disc bulging

6

at L3-4 and L5-S1 with no contrast seen in the right S1-S2 exiting nerve root. (Tr. 134-35).

On May 2, 2006, Claimant returned to Dr. Johnson. He did not recommend surgical intervention after reviewing the latest myelograms. Dr. Johnson found Claimant's pain was possibly of the fibromyalgia category. Claimant was discharged from Dr. Johnson's care with instructions that he remain off work until he was seen by Dr. Sutterfield. (Tr. 132).

On May 5, 2006, Claimant returned to Dr. Sutterfield with pain and spasms in his upper and lower back, neck pain with spinal muscle tension and numbness in his right leg and arm. Claimant was diagnosed with a herniated disc with radiculopathy and referred for pain management. (Tr. 191). Claimant continued seeing Dr. Sutterfield for problems related to back pain and radiculopathy in July, August, September, and October of 2006. (Tr. 187-89, 192).

On October 18, 2006, Claimant was attended by Dr. Larry Armstrong, a neurosurgeon. (Tr. 159-60). Dr. Armstrong did not recommend surgery but rather physical therapy and epidural steroid injections. He diagnosed Claimant with lumbar myofascial dysfunction and multilevel lumbar disc degeneration. (Tr. 160).

On January 22, 2007, a Physical Residual Functional Capacity Assessment form was completed by Dr. David Bissell, a non-examining

consultative physician. Dr. Bissell determined Claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, and unlimited pushing and pulling. (Tr. 150).

On February 28, 2007, Claimant saw Dr. James Blankenship, complaining of low back pain. Claimant exhibited brisk leg reflexes with non-sustained clonus bilaterally, equivocal right sided Hoffman's testing, no radicular symptoms, and some neck discomfort. (Tr. 163).

On March 1, 2007, Claimant underwent a cervical MRI which revealed mild to moderate spondylosis in the mid-cervical region not causing significant stenosis, mild spondylosis with mild bilateral neuroforaminal narrowing at C4-5, and more significant spondylosis with significant or severe left neural exit foraminal stenosis at C5-6. (Tr. 170-71).

On March 27, 2007, Claimant again saw Dr. Blankenship. He noted Claimant's most recent lumbar MRI showed multilevel degenerative changes with mild retrolisthesis and a probable annular tear at the L3-4 level without significant neural impingement. (Tr. 161).

On April 23, 2007, Claimant began seeing Dr. Richard Rowe. He

noted Claimant had some spondylitic disease. However, he was concerned Claimant was giving an exaggerated response during the examination which gave Dr. Rowe some hesitation to proceed with surgery. Dr. Rowe was willing to "give him the benefit of the doubt and offer for him surgery." (Tr. 233-34).

On May 9, 2007, Claimant underwent a lumbar CT scan which revealed disk bulging from L3 through S1 with mild bilateral neuroforaminal narrowing at L3-4 and L5-S1 and moderate bilateral neuroforaminal narrowing at L4-5. (Tr. 226). On June 15, 2007, Dr. Rowe performed a surgical fusion and decompressions affecting the L3 through S1 levels on Claimant. He was discharged on June 17, 2007. (Tr. 219-20, 222-23).

On April 30, 2008, Claimant returned to Dr. Rowe complaining of constant, throbbing right lower back pain. (Tr. 206). A lumbar MRI revealed disc desiccation from L-2 through S-1 levels, mild post-operative fluid build up, and mild spinal canal narrowing at L3-4 due to prominent ligamentum flavum hypertrophy. (Tr. 208).

On June 24, 2008, Dr. Sutterfield completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on Claimant. He found Claimant could lift and/or carry up to 10 pounds occasionally and no weight frequently, standing and/or walking less than 2 hours in an 8 hour workday, sitting less than

9

6 hours in an 8 hour workday, pushing and/or pulling limited in both upper and lower extremities. Claimant was found to never be able to climb, balance, kneel, crouch, or crawl. Dr. Sutterfield found Claimant was limited in reaching in all direction and feeling. He could not be subject to hazards. Dr. Sutterfield found Claimant's gait was disturbed. (Tr. 235-37).

In his decision, the ALJ found Claimant suffered from the severe impairment of a herniated lumbar disc with a fusion. (Tr. 10). He determined Dr. Sutterfield's opinions "have been weighed . . . considering the criteria set out in 20 CFR § 404.1527." (Tr. 15). The ALJ found Dr. Sutterfield's original opinion issued January 27, 2006 was "diminished in the weight given to it because of claimant's diminished credibility." He then stated that Dr. Sutterfield's June 24, 2008 opinion "is almost at a sedentary exertional level." (Tr. 14).

The ALJ is required to give a treating physician's opinion controlling weight, unless circumstances justify giving it a lesser weight. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both:

(1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th

11

Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

Essentially, the ALJ determined the medical opinion of Dr. Sutterfield was entitled to no weight by not including any of her limitations in his RFC assessment. The ALJ's reasoning for doing so is curious. He first rejects Dr. Sutterfield's initial opinion because he rejects Claimant's credibility. This cannot form the basis for the rejection of a treating physician's opinion. McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002). This is especially true where, as here, the opinion does not rely entirely upon the statements of the Claimant.

The ALJ also rejected Dr. Sutterfield's second opinion because it "is almost at a sedentary exertional level." Although the meaning of this phrase is not entirely clear, the perceived conclusion the ALJ reaches is not accurate. Dr. Sutterfield concluded Claimant could stand and/or walk for less than two hours and sit less than six hours in an eight hour workday. Neither of

12

these findings supports an RFC for sedentary work.  Close does not meet the criteria.  Since these were the only two cited bases for rejecting Dr. Sutterfield's opinions, the ALJ will be required to re-evaluate the opinions on remand and state with specificity the weight, even if reduced, he affords to the treating physician's opinions.

**Consideration of Probative Evidence**

Claimant contends the ALJ failed to consider all of the clinical findings made by Dr. Sutterfield in his decision.  He also asserts the findings by Dr. Johnson in May of 2006, Dr. Armstrong in October of 2006, Dr. Blankenship in February of 2007, and Dr. Deneke in October of 2007 were not discussed.

An ALJ is required to consider all relevant evidence in the record.  Soc. Sec. R. 06-03p.  He is not, however, required to discuss every piece of evidence in the record.  But it is clear that, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996)(citations omitted).  It is apparent the ALJ failed to discuss many of the medical findings from these treating physicians which conflicted with his ultimate conclusion on

13

Claimant's disability. On remand, the ALJ shall re-examine the medical record and discuss relevant evidence, even if it is in conflict with his decision.

### Credibility Analysis

On the issue of Claimant's credibility, the ALJ essentially found his claims of pain were exaggerated based upon a lack of objective medical evidence, particularly after the fusion surgery was performed. The medical evidence, however, indicates that an April, 2008 lumbar MRI showed some adverse changes in his spinal condition. Dr. Rowe also noted that disc problems and continuing pain could persist after surgery. (Tr. 227).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of

any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

While the ALJ's discussion of the factors in his decision was laudable, consideration of all of the objective evidence which might support Claimant's testimony is required. On remand, the ALJ shall re-evaluate the credibility of Claimant's testimony and claims of pain in light of the entirety of the medical record.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service

of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 12th day of July, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE